Good morning, Your Honor. May it please the Court, Tripp Johnson on behalf of Mr. Verduzco-Rangel. I'm going to do my best not to beat a dead horse too much with anything that Mr. Agapathy has argued so far, but I think I do need to step back at this point to make clear a few of the premises of our argument. One, and the government didn't dispute this from the beginning, is that the mens rea of California drug statutes, drug trafficking statutes, is overbroad because even under the California jury instructions, one need not know that this substance is controlled. They just have to believe they're possessing or trafficking in a particular substance. I know, Counsel, you say that your opponent said that, but is there any case law that you can cite to that indicates that the statute is overbroad with respect to the mens rea element? Well, that would be... So that's what you're trying to get from us. Well, no, Your Honor. I think previous counsel, Mr. Agapathy, cited the California cases that support our position. The government has gone even further and cited to CalCRM 2302 in its brief on page 13 to show that it's overbroad, and they haven't contested that issue. But to give sort of an example, in my brief I had a chart on page 20 in the opening brief of what it would be to be convicted of drug trafficking in that example of cocaine in California. One person on the jury could believe that the defendant knew or believed he had cocaine. Okay, that's generic, that fits, that's a federal offense. Another individual on that jury could say the defendant didn't know... Well, let me go back to one more before that one. The defendant thought he had copped. Now, this is one of the drugs that is prohibited under California law, not under federal law. For whatever reason, that juror believes that, and they find him guilty. That juror votes for guilt based on that theory. And then finally, there's a third juror who says he may not have known exactly what substance he had, but he knew he had one of them that was controlled. Now, that is our understanding of California law, an understanding of California law that the government has not challenged. And that is the overbreadth when we come back to where we are today, which is would a conviction for drug trafficking under that example qualify as an aggravated felony under Route 1? As my colleague has indicated, her understanding, as is mine, is that clearly the defendant needs to know that he or she has a controlled substance, that is, has an illegal substance. But the specificity of that is not required. So, for example, if somebody has cocaine and they think it's, you know, marijuana before January 1 or whatever, that's enough. You say it's not. They need to have some specificity in their knowledge about what they have. Is that right? Our position is the defendant, simply under California law, and this is consistent with the Supreme Court's understanding of Mifaden, just has to know or believe they have a particular substance that is controlled. And that's what my colleague has indicated. But it seems to me you're trying to burrow down that they have to have a knowledge of a particular kind of substance, you know, one versus another, not just that it's an illegal substance. Well, I don't… Am I right? Well, I think Justice Roberts thinks you're right because of his special concurrence in Mifaden, the Supreme Court case that essentially gave us the breadth of definition of knowledge for a federal drug trafficking offense. He believed that not only does a person need to know that he has a particular substance that is controlled under law, but that the individual also has to know that the substance is controlled. But he was only one vote in an otherwise unanimous court in Mifaden. California, under the case law that has been cited, has an identical understanding of the mens rea. The problem with California law is that that mens rea can mean you thought you had something like cot, an example in California law, that isn't controlled under the Federal Controlled Substance Act. And if it turns out to be a drug like cocaine or methamphetamine that's controlled federally, the government's argument is, well, then they are deportable as not just deportable, but deportable as an aggravated felon. So in this example where someone thinks they have cot, but they actually have cocaine, I had understood that under the categorical approach, we had to ask whether this is something that's ever really going to occur, or whether it's just a hypothetical possibility that is not really ever going to occur. And I tried to look for such a case, and I couldn't find one. Do you know of any case where someone thought they had one of the few things that's illegal only in California, but actually had a federal controlled thing, and this was an issue? Well, let me answer that in two steps. First, the fact that California prescribes cot, and the federal schedule doesn't, is enough to overcome the Duane Nassauverez problem, I guess we'll call it, as the government suggested. I don't have to point to a case. If I can point to the law specifically prohibits cot, but as for the cases, the government didn't essentially dispute this below. So I think Mr. Ragopathy has cited three cases that show that a person believed they had one substance and not another. But in all of those, they were illegal under federal and state. I mean, this is like California has, I mean, I actually don't know for sure how obscure cot is, but it seems like California has a few obscure substances. It seems quite unlikely that someone's going to think they have this obscure substance when really they have cocaine or marijuana. And so it is a possibility. I mean, it is a theoretical possibility given the overlap of the two laws. There's a little extra. But it's like a very obscure extra, isn't it? Well, the government would suggest that that's only the beginning of the extras. The government has argued in its brief that states are on a regular basis expanding their schedules beyond the federal schedule, that these are the incubators of experimentation and how to control certain substances that the federal government hasn't reached yet. So the government would disagree and say, no, these state schedules are ever expanding. And I think the problem is, is we have language for the aggravated felony definition that came into existence in 1990 and hasn't changed since then. But what does that do? I think that gets back to the question that I asked your colleague. Specifically, we've got Renton v. Mukasey. That defines this as a drug trafficking offense, even though it didn't consider the mens rea element. But by failing to consider it, the negative pregnant of that is not necessary. Isn't that something we have to deal with? Well, I would disagree, Your Honor. I think unless an issue is squarely presented before the court that you can't assume it was decided sub saliencio. And Ms. Ragapathy mentioned Valdivia Court. There have certainly been a lot of cases where people have been convicted without ever having the mens rea element considered, right? Probably thousands of them. Are those all illegal? Those convictions illegal? Well, let me take a recent example. This court in Valdivia Flores considered an argument that Washington aiding and abetting was overbroad. There were cases, Ninth Circuit cases, that said that the particular Washington state drug statute at issue in that case qualified as an aggravated felony. However, the issue was never presented of whether Washington aiding and abetting, which is implied in every offense, is overbroad. And the court held that, yes, in fact, those other cases are overruled, that those other convictions would essentially. I remember who was on that panel. Judge O'Scanlan wrote the opinion. I was the attorney of record on the case. I remember that one well, then. Yes, Your Honor. But it's a recent example, and I think we just had one last week authored by Judge Rawlinson concerning Nevada statutes and the overbreadth of conspiracy. So it's, yes, the court has to confront the new issue and determine whether this would still remain an aggravated felony. So from your perspective, Renton, even though it discusses, if you will, the elements and does not include mens rea, we are going to discover one here based upon your reading of the state statute. In other words, they said it was an aggravated felony in Renton. Right. 11-378. You're saying, no, not true because you didn't consider the mens rea element. The fact that they didn't consider it, but they nonetheless found it an aggravated felony, it seems to me it's rather strange to just say, well, suddenly we have a new element in here. Well, my best case for that, Your Honor, would be Valdivia Flores. I can write a 28-J with that particular language in it. And I see my time is running out, and I appreciate the time I was given by previous counsel. But I would like to get to the concerns that we have with the government's proposed position here, which is that those cases would be irrelevant as well because they say if someone has been, and let me get their own language, under their reading, this Route 1 requires, quote, only that a crime have as an element some sort of commercial dealing, not even illicit commercial dealing, and to continue the quote, of a drug that, quote, in fact, turns out to be federally controlled. What the government is asking is not to even engage in a categorical or a modified categorical analysis. They're doing what I think is more similar to cases like Nijuan, where you look at circumstance-specific issues. They're saying what drug was involved here. If the person suffered a conviction under a particular state, just look at what drug is involved. Mendoza-Lopez, under the government's preferred reading, would have been unnecessarily used resources. Okay. Other questions that my colleagues have? Thank you for your argument. Thank you, Your Honor. We appreciate it. So we'll hear from the government. Thank you again, Your Honors. I think I can be brief here. I know the first thing that my opponent said was that the government is not contesting that the mens rea element is overbroad. That is absolutely not true, Your Honor. When one uses the word overbroad, it has to be overbroad with reference to a generic definition. Our position is no matter how much scrutiny this Court gives to California's mens rea for its drug statutes, it is absolutely in step with the majority of states. They have the burden of proof. Even now, after a 16-month stay for Martinez-Lopez, they have yet to cite a single case that says that California is out of step with the majority. Again, in Garcia-Santana, this Court said, if we're going to come up with the generic definition. Why is it their burden of proof? Because it's a 132060 motion, Your Honor. And I believe in United States v. Barajas-Alvarado, the 12-foot note, it's a case cited in one of the briefs. They're the ones that are bringing the motion to dismiss. And so for that fundamental unfairness prong, it consists of proving a due process violation and proving prejudice. But our point, again, is that California. Can you say again where that footnote is? It seems like if you're trying to have this heightened penalty because of this aggravated felony, it should be your burden. This is collateral review, but it's United States v. Barajas-Alvarado, B-A-R-A-J-A-S-hyphen-A-L-V-A-R-A-D-O. It's footnote 12. It cites to other authorities. And again, some of their authorities in my opponents' briefs, they're on direct review. This court in the United States v. On burden of proof or burden of going forward? I think burden of proof because I think in that case it said the defendant here has not carried their burden of proving a due process violation or prejudice. So from that, we read burden of proof. But the other point that I just wanted to make in closing, Your Honor, is if, you know, I know they ran out of time. If you want to give them another minute, see, tell us one case. Are you going to stop? Or I'll give them some of my stuff. Absolutely. And only on this, Your Honor, you pointed out Rendon v. Mukasey. To the extent this court sees any tension with the defense position in cases that have been on the books for years, they need to show that they're clearly irreconcilable with those cases. That is a very high standard. We don't think it's met. Again, it was very gentlemanly of you to offer other counsel. We're going to give you two minutes of your opponent's time. Thank you, Your Honor. I appreciate that. And if I could just point the court in one final direction to appreciate sort of the scope of our argument. Mr. Verdusco very likely was deportable, but not as an aggravated felon, but under another provision, and this is 8 U.S.C. 1227, which makes deportable any alien who at any time after admission has been convicted of a violation or a conspiracy or attempt to violate any law or regulation of a state, the United States, or a foreign country, and this is the important language, relating to a controlled substance as defined under 21 U.S.C. So you're encouraging the government to remove your client? No, Your Honor. I'm challenging that he was deported as an aggravated felon. It carries much more significant and lasting impacts than deportation under this provision, and that's why it's important to get this issue right. If the government's argument is correct, this is the language Congress already knew long before it amended and created this new Route 1 to use to make sure that all you have to do is see that the individual was convicted of a state offense and that that state offense related to a particular controlled substance under the federal schedule. And do you think it's their burden to prove that or your burden to prove that it's not that? I think it's what we have demonstrated, what we have argued through this case, is that whether you read this as a method of statutory analysis or whether you engage in some sort of tailor analysis, you first have to look at the words of the aggravated felon statute, which say an aggravated felony is illicit trafficking of a controlled substance as defined. So it's a pure question of law. It doesn't matter whose burden it is. Is that basically your answer on that? Well, it is a pure question of law, and we don't have to do a 50-state survey if our position is correct, because what we know is that Congress knew how to make it relating to a controlled substance, where you just look at the controlled substance. Instead, they said an illicit trafficking offense, and I don't want to. Can you explain to me as a last point, we always hear that Congress knows how to draft statutes and that they know what they're doing. I've never seen much evidence of that. Can you give me any illustration of where they have done that with the statute, where they knew exactly how it was going to fit? Well, it might be best done over a beer to explain my understanding of that. But I can tell the court just one brief thing, is that the courts are required to interpret these statutes. It's the court's burden, really, to interpret these statutes, however Congress came about getting to them. This is a very hard one, and I'm not even necessarily sure that the government, I don't believe the government has the best position, but lenity would lead this court to adopt the position here. And I just ask you to look at 1227A2B1 and compare that to what the government says should apply here for aggravated crime. I had one question about the very point you were making just a minute ago about the word illicit. So it's one thing to be arguing that inherent in all federal law is the requirement of a particular kind of mens rea or something like that. But you also seem to be arguing that the word illicit imports that particular kind of mens rea. What's your basis for that? Well, the entire statute is illicit trafficking in a controlled substance. Yeah, so why isn't it that there can be perfectly legal trafficking in a controlled substance. For example, a pharmaceutical company could be selling opioids, and then someone could be selling opioids who's not a pharmaceutical company. That would be illicit trafficking. It has nothing to do with mens rea. Well, I think that's an interesting point, Judge Rakoff. What illicit trafficking is in my understanding is that you have to be engaged in some illegal conduct. And the debate that we've had with the government is that illicit trafficking has to be guilty conduct or guilty mens rea within the federal scope and as understood under cases like McFadden. And the government says, no, it's enough for a state to define its mens rea, its guilty knowledge, in any way the state sees fit. And if that person has been convicted under a state law that makes possession of oregano illegal, but it turns out to be marijuana or some other federally prohibited substance, that's good enough to deport him as an aggravated felon. And I think that's where our argument begins is that illicit trafficking in a controlled substance, as defined under federal law, means that we have the generic offense. And we look to the federal mens rea for that. And many states like California are overbroad. Any other questions by my colleague? Thanks to all counsel. We appreciate the collegial way in which you're dealing with one another on this important question. And we will decide this case, which has just been submitted, as well as the previous one, and hopefully provide some answers. The next case today for argument is USA v. Walton.
judges: M. Smith, Friedland, Rakoff